1   MEGAN COONEY, SBN 295174
        mcooney@gibsondunn.com
2   LAUREN M. FISCHER, SBN 318625
        lfischer@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
    3161 Michelson Drive
4   Irvine, CA  92612-4412
    Telephone:  949.451.3800
5   Facsimile:   949.451.4220

6   Attorneys for Defendant
    PELOTON INTERACTIVE, INC.

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11  | MITCHELL MCKINNON, an | CASE NO.  2:22-cv-03368
    | individual; TIMOTHY VAN |
12  | NORTWICK, an individual, an | **DEFENDANT PELOTON**
    | individual; BRENT BRICE, an | **INTERACTIVE, INC.'S NOTICE OF**
13  | individual; ZACHERY RIZZO, an | **REMOVAL OF CLASS ACTION**
    | individual; JOSHUA REYES, an |
14  | individual; ONIKA JACK, an | (Los Angeles County Superior Court Case
    | individual; HERBERT HERNANDEZ, | No. 22STCV12828)
15  | an individual; NICHOLAUS JAMES, |
    | an individual; LACRETIA DAVIS, | Action Filed:        April 15, 2022
16  | an individual; SALVADOR PULIDO, an |
    | individual, each as an individual and on |
17  | behalf of all others similarly situated, |

18                   Plaintiffs,

19         v.

20  PELOTON INTERACTIVE, INC., a
    Delaware corporation; and DOES 1-50,
21  inclusive,

22                   Defendant

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.    TIMELINESS OF REMOVAL ................................................................. 1

II.   SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL ........... 1

    A.    The Proposed Class Consists of More than 100 Members ....................... 5

    B.    Peloton and Plaintiffs Are Citizens of Different States ........................... 5

    C.    The Amount in Controversy Exceeds $5 Million ...................................... 8

        1.    Plaintiffs' Allegations Regarding Waiting Time Penalties Place More than $1.8 Million in Controversy ............................... 10

        2.    Plaintiffs' Claim for Alleged Violation of Labor Code Section 226 Places Another $879,850 in Controversy ................. 12

        3.    Plaintiffs' Allegations Regarding Meal and Rest Periods Places Another $2.6 Million in Controversy ................................ 14

        4.    Plaintiffs' Request for Attorneys' Fees Places an Additional $1.3 Million in Controversy ........................................................ 18

        5.    Just Four of Plaintiffs' Ten Causes of Action, Including Attorneys' Fees, Place More than $6.7 Million in Controversy .......................................................................... 19

III.  THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER ........... 20

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arias v. Residence Inn by Marriott*,
  936 F.3d 920 (9th Cir. 2019) ........................................................................ 8, 9, 18

*Avila v. Kiewit Corp.*,
  789 F. App'x 32 (9th Cir. 2019) ........................................................................ 17

*Ayala v. Cox Auto., Inc.*,
  2016 WL 6561284 (C.D. Cal. Nov. 4, 2016) ..................................................... 6, 7

*Barcia v. Contain-A-Way, Inc.*,
  2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ........................................................ 18

*Branch v. PM Realty Grp., L.P.*,
  647 F. App'x 743 (9th Cir. 2016) ...................................................................... 17

*Campbell v. Vitran Exp., Inc.*,
  471 F. App'x 646 (9th Cir. 2012) ........................................................................ 8

*Chavez v. Pratt (Robert Mann Packaging), LLC*,
  2019 WL 1501576 (N.D. Cal. Apr. 5, 2019) ...................................................... 17

*Crummie v. CertifiedSafety, Inc.*,
  2017 WL 4544747 (N.D. Cal. Oct. 11, 2017) .................................................... 11

*Dada v. CyberCoders, Inc.*,
  Case No. 8:18-cv-01023-JVS-JDE (C.D. Cal. Mar. 6, 2020) ............................. 18

*Danielsson v. Blood Centers of Pac.*,
  2019 WL 7290476 (N.D. Cal. Dec. 30, 2019) .............................................. 15, 17

*Dart Cherokee Basin Op. Co. v. Owens*,
  574 U.S. 81 (2014)............................................................................................. 9

*Ferra v. Loews Hollywood Hotel, LLC*,
  11 Cal. 5th 858 (2021) ...................................................................................... 15

*Garza v. Brinderson Constructors, Inc.*,
  178 F. Supp. 3d 906 (N.D. Cal. 2016)................................................................ 16

Gibson, Dunn & Crutcher LLP

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................. 18

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) .................................................................................. 8

*Johnson v. Columbia Props. Anchorage, LP*,
  437 F.3d 894 (9th Cir. 2006) ................................................................. 8

*Kantor v. Wellesley Galleries, Ltd.*,
  704 F.2d 1088 (9th Cir. 1983) ............................................................... 5

*Korn v. Polo Ralph Lauren Corp.*,
  536 F. Supp. 2d 1199 (E.D. Cal. 2008) .................................................. 8

*LaCross v. Knight Transp. Inc.*,
  775 F.3d 1200 (9th Cir. 2015) ............................................................... 9

*Lewis v. Verizon Commc'ns, Inc.*,
  627 F.3d 395 (9th Cir. 2010) .............................................................. 4, 9

*Mackall v. Healthsource Glob. Staffing, Inc.*,
  2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) ......................................... 16

*Mamika v. Barca*,
  68 Cal. App. 4th 487 (1998) .................................................................. 11

*Marentes v. Key Energy Servs. Cal., Inc.*,
  2015 WL 756516 (E.D. Cal. Feb. 23, 2015) ........................................... 11

*Mays v. Wal-Mart Stores, Inc.*,
  804 F. App'x 641 (9th Cir. 2020) .......................................................... 13

*Mejia v. DHL Express (USA), Inc.*,
  2015 WL 2452755 (C.D. Cal. May 21, 2015) ......................................... 13

*Mendoza v. Savage Servs. Corp.*,
  2019 WL 1260629 (C.D. Cal. Mar. 19, 2019) ........................................ 16

*Murphy v. Kenneth Cole Prods., Inc.*,
  40 Cal. 4th 1094 (2007) ........................................................................ 15

Gibson, Dunn &
Crutcher LLP

iii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) (en banc) .......................................................... 4

*Pineda v. Bank of Am., N.A.*,
    50 Cal. 4th 1389 (2010) ................................................................................. 10

*Salter v. Quality Carriers, Inc.*,
    974 F.3d 959 (9th Cir. 2020) ........................................................................... 9

*Soto v. Tech Packaging, Inc.*,
    2019 WL 6492245 (C.D. Cal. Dec. 3, 2019).................................................. 13

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013)........................................................................................... 9

*Tajonar v. Echosphere, L.L.C.*,
    2015 WL 4064642 (S.D. Cal. July 2, 2015).................................................. 11

*Tamimi v. SGS N. Am., Inc.*,
    2019 WL 3408692 (C.D. Cal. July 29, 2019) ............................................... 16

**STATUTES**

28 U.S.C. § 84(c) .................................................................................................. 20

28 U.S.C. § 1332(c)(1)......................................................................................... 7, 8

28 U.S.C. § 1332(d) ......................................................................................*passim*

28 U.S.C. § 1441..........................................................................................1, 4, 20

28 U.S.C. § 1446.......................................................................................1, 20, 21

28 U.S.C. § 1453................................................................................................1, 20

Cal. Civ. Proc. Code § 338(a) ........................................................................ 10, 15

Cal. Civ. Proc. Code § 340(a) .............................................................................. 14

Cal. Civ. Proc. Code § 382 .................................................................................... 2

Cal. Code Regs. tit. 8, § 13520 ............................................................................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
(continued)

Page(s)

Cal. Lab. Code § 201 ..................................................... 10

Cal. Lab. Code § 202 ..................................................... 10

Cal. Lab. Code § 203 ................................................. 10, 11

Cal. Lab. Code § 204 ...................................................... 3

Cal. Lab. Code § 226 .......................................... 12, 13, 14, 15

Cal. Lab. Code § 226.7(c) ................................................ 15

Class Action Fairness Act of 2005 ................................... *passim*

Gibson, Dunn &
Crutcher LLP

v

**TO THE CLERK FOR THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFFS, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendant Peloton Interactive, Inc. ("Peloton" or "Defendant") hereby removes to the United States District Court for the Central District of California the above-captioned state court action, originally filed as Case No. 22STCV12828 in Los Angeles County Superior Court, State of California. Removal is proper on the following grounds:

**I.    TIMELINESS OF REMOVAL**

1.    Plaintiffs filed a putative Class Action Complaint against Peloton in Los Angeles County Superior Court, State of California, Case No. 22STCV12828, on April 15, 2022.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Civil Case Cover Sheet Addendum, (e) Notice of Case Assignment – Unlimited Civil Case, (f) First Amended General Order (Mandatory Electronic Filing for Civil), (g) Alternative Dispute Resolution (ADR) Information Package, (h) Voluntary Efficient Litigation Stipulations Packet, (i) Notice of Service of Process Transmittal, and (j) Proof of Service of Summons are attached as Exhibits A–J to the Declaration of Megan Cooney ("Cooney Decl.") filed concurrently herewith.

2.    According to the Notice of Service of Process Transmittal, Plaintiffs served Peloton through its registered agent for service of process on April 19, 2022.  *See* Cooney Decl. ¶ 13, Ex. I.  This notice of removal is timely because it is filed within 30 days after service was completed.  28 U.S.C. § 1446(b).

**II.    SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL**

3.    Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against

Peloton pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4.      CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure section 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. *See id.* § 1332(d)(1)(B); *see also* Cooney Decl., Ex. B, Class Action Complaint ("Compl.") ¶ 1.

5.      In their Class Action Complaint, Plaintiffs allege nine causes of action against Peloton:  (1) Failure to Provide Meal Periods in Violation of Labor Code Sections 226.7 and 512; (2) Failure to Provide Rest Periods in Violation of Labor Code Sections 226.7 and 1198; (3) Failure to Pay Overtime in Violation of Labor Code Section 510; (4) Failure to Maintain Accurate Records in Violation of Labor Code Section 1174(d); (5) Failure to Pay All Wages When Due in Violation of Labor Code Section 204; (6) Failure to Provide Accurate Itemized Wage Statements in Violation of Labor Code Sections 226(a) and 226.3; (7) Failure to Reimburse Work Expenses in Violation of Labor Code Section 2802; (8) Failure to Timely Pay Wages Upon Termination in Violation of Labor Code Sections 201, 202, and 203; (9) Violation of the California WARN Act; and (10) Unfair Business Practices in Violation of Business & Professions Code Section 17200, *et seq*. *See* Cooney Decl., Ex. B, Compl. ¶¶ 80–171.

6.      Plaintiffs ask the Court for "an order certifying the First through Tenth causes of action and maintaining said causes of action as a class action," as well as an order "[d]esignati[ng] [] Plaintiffs as the Class Representatives for the Class[.]" *Id.*, Compl., Prayer for Relief ¶¶ 1–2.  They seek to represent all individuals "currently [] or formerly [employed by Peloton] in the State of California as non-exempt, hourly, full time and part time employees" who performed worked as a "Treadmill Specialist, Assembler, Warehouse Associate, Tread Operations, Driver, Outbound, Master Technician, Field Operations Lead, and other similar positions for [Peloton]." Compl.

Gibson, Dunn & Crutcher LLP

¶ 26; *see also* Cooney Decl. ¶ 2.  Each of the seven putative classes are defined as follows:

(1) **Untimely Payment of Wages Class**:  "All members of the Class who [Peloton] failed to timely pay all wages earned when due, as defined by Labor Code § 204 for all hours worked during the Class Period."

(2) **Overtime Class**:  "All members of the Class who (a) worked in excess of 8 hours per day and/or 40 hours per week; and (2) who [Peloton] failed to pay wages at the requisite overtime rates of pay for overtime hours working during the Class Period."

(3) **Meal Period Class**:  "All members of the Class that [Peloton] did not provide 30-minute, uninterrupted and duty-free meal periods for shifts over 5 and 10 hours of work, and who were not paid an additional hour of pay in lieu thereof during the Class Period."

(4) **Rest Period Class**:  "All members of the Class that [Peloton] did not provide 30-minute, uninterrupted and duty-free 10-minute paid rest periods for every four hours worked, or major fraction thereof, and who were not paid an additional hour of pay in lieu thereof during the Class Period."

(5) **Wage Statement Class**:  "All members of the Class that [Peloton] did not provide accurate, itemized wage statements showing all hours actually worked, all wages earned, and the applicable rates of pay for each hour worked during the Class Period."

(6) **Waiting Time Class**:  "All members of the Class who (a) from three years prior to the filing of this complaint separated from [Peloton's] employment, and (2) who [Peloton] knowingly and willfully failed to pay all wages due within 72 hours of the time such employees voluntarily or involuntarily ended their employment with [Peloton] during the Class Period."

Gibson, Dunn &
Crutcher LLP

3

(7) **Reimbursement Class**:  "All members of the Class that [Peloton] did not reimburse expenses necessarily incurred in the discharge of performing their work-related duties during the Class Period."

*Id.*, Compl. ¶¶ 66–72.[1]

7.    Among other things, Plaintiffs allege that putative class members are entitled to statutory penalties for allegedly non-compliant rest periods, late payment of wages and inaccurate wage statements, equitable relief, interest, and attorneys' fees and costs. *See id.*, Compl., Prayer for Relief.

8.    Removal of a class action under CAFA is proper if:  (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

9.    Peloton denies any liability in this case, both as to Plaintiffs' claims and as to the claims they seek to pursue on behalf of the putative class.  Peloton also intends to oppose class certification on multiple grounds, including that class treatment is inappropriate under these circumstances in part because there are many material differences between the experiences of Plaintiffs and the putative class members they seek to represent, as well as amongst the putative class members.  Peloton expressly reserves all rights to oppose class certification and contest the merits of all claims asserted in the Class Action Complaint.  However, for purposes of the jurisdictional

---

[1] Each of these seven subclasses are pleaded as impermissible fail safe classes.  Plaintiffs ask this Court to "create a 'fail safe' class that is defined to include only those [Peloton employees] who were injured by the allegedly unlawful conduct." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc).  "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* (quotations omitted).  Plaintiffs' improper pleading device does not require Peloton to prove how many employees have actually been "injured" by alleged violations in order to estimate how many individuals are putative members of the class. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

requirements for removal only, the allegations in Plaintiffs' Class Action Complaint identify a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million, as demonstrated below. *See* 28 U.S.C. § 1332(d)(6).

**A.    The Proposed Class Consists of More than 100 Members**

10.    Based on Plaintiffs' allegations, this action satisfies CAFA's requirement that the putative class contains at least 100 members. *See id.* § 1332(d)(5)(B).

11.    Each of Plaintiffs' proposed classes consists of all individuals "currently [] or formerly [employed by Peloton] in the State of California as non-exempt, hourly, full time and part time employees" who performed worked as a "Treadmill Specialist, Assembler, Warehouse Associate, Tread Operations, Driver, Outbound, Master Technician, Field Operations Lead, and other similar positions for [Peloton]." Cooney Decl. ¶¶ 2–3; *see also id.*, Ex. B, Compl. ¶ 26. According to Peloton's records, there were approximately 857 full-time, non-exempt individuals employed by Peloton in California between April 15, 2019 and April 15, 2022. Declaration of Christine Pinkston ("Pinkston Decl.") ¶ 6(c). This putative class size estimate (a) only includes non-exempt employees who worked as a "Treadmill Specialist, Assembler, Warehouse Associate, Tread Operations, Driver, Outbound, Master Technician, Field Operations Lead, and other similar positions for [Peloton]"; and (b) it does not include non-exempt employees who only worked for Peloton in California between April 15, 2018 and April 15, 2019, or after April 15, 2022.

12.    Accordingly, while Peloton denies that class treatment is permissible or appropriate, the proposed class consists of over 100 members.

**B.    Peloton and Plaintiffs Are Citizens of Different States**

13.    Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

14.    A person is a citizen of the state in which he or she is domiciled. *Kantor v.*

*Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is prima facie evidence of his or her domicile. *Ayala v. Cox Auto., Inc.*, 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Each of the ten named plaintiffs allege that they are citizens of California, as follows:

    a. Plaintiff Mitchell McKinnon alleges that he "is, and was, at all times relevant to this Complaint, an adult individual who lived in Long Beach, California" who was employed by Peloton "as a Treadmill Specialist" "in the County of Los Angeles, California." Cooney Decl., Ex. B, Compl. ¶ 4.

    b. Plaintiff Timothy Van Nortwick alleges that he "is, and was, at all times relevant to this Complaint, an adult individual who lived in Hemet, California" who was employed by Peloton "as an Assembler" "in the County of Riverside, California." *Id.*, Compl. ¶ 5.

    c. Plaintiff Brent Brice alleges that he "is, and was, at all times relevant to this Complaint, an adult individual who lived in Los Angeles County, California" who was employed by Peloton "as a Warehouse Associate" "in the County of Los Angeles, California." *Id.*, Compl. ¶ 6.

    d. Plaintiff Zachery Rizzo alleges that he "is, and was, at all times relevant to this Complaint, an adult individual who lived in Los Angeles, California" who was employed by Peloton "as a Thread Operations and Driver" "in the County of Los Angeles, California." *Id.*, Compl. ¶ 7.

    e. Plaintiff Joshua Reyes alleges that he "is, and was, at all times relevant to this Complaint, an adult individual who lived in Riverside, California" who was employed by Peloton "as an Outbound" "in the County of Riverside, California." *Id.*, Compl. ¶ 8.

    f. Plaintiff Onika Jack alleges that she "is, and was, at all times relevant to this Complaint, an adult individual who lived in Vallejo, California"

who was employed by Peloton "as an Outbound" "in the County of Alameda, California." *Id.*, Compl. ¶ 9.

g.  Plaintiff Herbert Hernandez alleges that he "is, and was, at all times relevant to this Complaint, an adult individual who lived in Los Angeles, California" who was employed by Peloton "as a Master Technician" "in the County of Los Angeles, California." *Id.*, Compl. ¶ 10.

h.  Plaintiff Nicholaus James alleges that he "is, and was, at all times relevant to this Complaint, an adult individual who lived in Berkeley, California" who was employed by Peloton "as a Field Operations Lead" "in the County of Alameda, California." *Id.*, Compl. ¶ 11.

i.  Plaintiff LaCretia Davis alleges that she "is, and was, at all times relevant to this Complaint, an adult individual who lived in Contra Costa County of California" who was employed by Peloton "as a Warehouse Buyer Builder" "in the County of Contra Costa, California." *Id.*, Compl. ¶ 12.

j.  Plaintiff Salvador Pulido alleges that he "is, and was, at all times relevant to this Complaint, an adult individual who lived in Romoland, California" who was employed by Peloton "as an Assembly Technician" "in the County of Riverside, California." *Id.*, Compl. ¶ 13.

15.  Therefore, all ten named Plaintiffs are considered citizens of California for purposes of removal under CAFA. *See Ayala*, 2016 WL 6561284, at *4.

16.  A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1). Peloton is a Delaware corporation with its principal place of business in New York. Pinkston Decl. ¶ 3.

17.  The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) and (d)(2)(A) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its

headquarters—provided that the headquarters is the actual center of direction, control, and coordination[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Peloton's headquarters, which are located in New York, constitute its "nerve center" under the test adopted in *Hertz* because Peloton's high-level officers oversee the corporation's activities from that state. *See* Pinkston Decl. ¶ 3. As such, Peloton is a citizen of New York, in addition to Delaware, the place where it is incorporated. *See* 28 U.S.C. § 1332(c)(1); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

18.     Accordingly, Plaintiffs and Peloton are citizens of different states and CAFA's minimal diversity requirement is met. 28 U.S.C. § 1332(d)(2)(A).

**C.     The Amount in Controversy Exceeds $5 Million**

19.     CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interests and costs. *Id.* § 1332(d)(2). In calculating the amount in controversy, a court must aggregate the claims of all individual class members. *Id.* § 1332(d)(6).

20.     In assessing whether the amount-in-controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)). Further, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees *must* be included in the assessment of the amount in controversy" for CAFA purposes. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

21.     "[A] defendant's notice of removal need include only a plausible allegation

Gibson, Dunn & Crutcher LLP

that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014).  To satisfy this burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–02 (9th Cir. 2015).  "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925; *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." (internal quotation marks and citations omitted)).  That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis*, 627 F.3d at 400.

22.    Accordingly, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87.  Importantly, plaintiffs seeking to represent a putative class cannot "bind the absent class" through statements aimed to limit their recovery in an effort to "avoid removal to federal court." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013).

23.    Peloton reserves the right to present evidence establishing the amount placed in controversy by each of Plaintiffs' claims should Plaintiffs challenge whether the jurisdictional amount-in-controversy threshold is satisfied.  *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 964 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings," requires the removing defendant to "support her jurisdictional allegations with competent proof" (internal quotation marks omitted)).  "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias*, 936 F.3d at 924.

24.      Although Peloton denies that Plaintiffs' claims have any merit, for the purposes of meeting the jurisdictional requirements for removal *only*, if Plaintiffs were to prevail on every claim and allegation in their Class Action Complaint on behalf of the putative class, the requested monetary recovery would exceed $5 million.

**1.      Plaintiffs' Allegations Regarding Waiting Time Penalties Place More than $1.8 Million in Controversy**

25.      Plaintiffs' claim for waiting time penalties pursuant to Labor Code section 203 puts at least $1.8 million in controversy.

26.      Plaintiffs allege that they and other putative class members who ended their employment with Peloton during the three-year period prior to filing this action—April 15, 2019 to April 15, 2022—are entitled to recovery of "waiting time penalties" pursuant to Labor Code section 203.[2]  *See* Cooney Decl., Ex. B, Compl. ¶ 71.

27.      If an employer fails to pay all wages due to an employee at the time of termination, as required by Labor Code section 201, or within 72 hours after resignation, as required by Labor Code section 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days.  Cal. Lab. Code § 203.  An employer may not be liable for these penalties if a good faith dispute exists as to whether the wages are owed.  Cal. Code Regs. tit. 8, § 13520.  Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be willful.  *See* Cal. Lab. Code § 203.  "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due."  Cal. Code Regs., tit. 8, § 13520.

28.      To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of 30 days, depending on the length of delay in receipt of

---

[2]  The statute of limitations for an action under Labor Code section 203 is three years. Cal. Civ. Proc. Code § 338(a); Cal. Lab. Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010).

wages. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 489, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days" and noting that the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, L.L.C.*, 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015). Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members." *Marentes v. Key Energy Servs. Cal., Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015).

29.    Peloton denies that any such penalties are owed to Plaintiffs or any putative class members. However, for purposes of this jurisdictional analysis only, Peloton relies on Plaintiffs' allegations that the penalties are owed. Plaintiffs allege that Peloton "failed to provide all wages earned throughout Plaintiffs and Class Members employment and further failed to remedy its violations at the time of separation from [Peloton]. As such Plaintiffs and Class Members did not receive all wages earned." Cooney Decl., Ex. B, Compl. ¶ 145; *see also id.*, Prayer for Relief ¶¶ 5–6 (seeking an award for all "unpaid wages" and "unpaid overtime wages"). Therefore, "Plaintiffs seek an award of 'waiting time penalties' pursuant to Labor Code § 203, and attorney's fees and costs." *Id.*, Compl. ¶ 148. Plaintiffs' waiting time claim is therefore derivative of their other unpaid wage and meal and rest period claims. Based on these allegations, it is reasonable to assume that Plaintiffs will seek 30 days' wages for every putative class member that resigned or was terminated during the statutory period. *See Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where a plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

30.    According to Peloton records, there were approximately 444 non-exempt employees (a) with the job titles Treadmill Specialist, Assembler, Warehouse Associate, Tread Operations, Master Technician, Field Operations Lead (all of which were

identified in the complaint), and Field Specialist, Assembly Associate, Associate – Manufacturing (the positions one or more of the Plaintiffs held), and Assembly Technician, Field Specialist, Field Operations Coordinator (positions with titles similar to those listed in the complaint); and (b) who resigned or were terminated in California between April 15, 2019 and April 15, 2022.  Pinkston Decl. ¶ 6(e).  The average hourly pay rate for those 444 employees was $21.  Pinkston Decl. ¶ 6(a).

31.    If, as Plaintiffs allege, non-exempt, hourly individuals who worked for Peloton during the three years preceding the filing of the action were owed wages and did not receive them, the amount in controversy with respect to the waiting time penalties claim for just non-exempt employees at Peloton who resigned or were terminated before April 15, 2022 would be approximately **$1,818,180**, calculated as follows:

| $21 average hourly rate x 6.5 hours per day: | $136.50 daily rate |
|---|---|
| $136.50 x 30 days maximum penalty: | $4,095 per employee |
| Amount in controversy for waiting time penalties, based on Plaintiffs' allegations ($4,095 x 444 employees): | **$1,818,180** |

32.    The amount in controversy alleged by Plaintiffs on this claim alone thus exceeds $1.8 million.

**2.    Plaintiffs' Claim for Alleged Violation of Labor Code Section 226 Places Another $879,850 in Controversy**

33.    Plaintiffs allege in their Sixth Cause of Action that Peloton "knowingly and willingly failed to comply with *Labor Code* § 226" by issuing wage statements that "were not accurate."  Cooney Decl., Ex. B, Compl. ¶ 130 (emphasis in original). Plaintiffs allege that, among other things, the wage statements did not "include all hours worked, such as the hours worked during on-duty rest and meal breaks, overtime hours and premium pay for regularly missed or otherwise, non-compliant, rest and meal breaks.  As such, the wage statements issue[d] to the Plaintiffs and Class Members were not accurate, did not reflect or include all wages earned during each and every pay period

Gibson, Dunn & Crutcher LLP

12

of the Class Period." *Id.*  On this ground, Plaintiffs seek, among other things, "penalties" pursuant to Labor Code section 226.  *Id.* ¶ 131.

34.    Under section 226(e)(1), an employee suffering injury as a result of an intentional failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  Cal. Lab. Code § 226(e)(1).

35.    Peloton denies that any such penalties are owed to Plaintiffs or putative class members.  However, for purposes of this jurisdictional analysis *only*, Peloton relies on Plaintiffs' allegations that the penalties are owed.  Plaintiffs allege that Peloton failed to provide accurate wage statements because of its alleged underlying failures to, among other things, include "hours worked during on-duty rest and meal breaks, overtime hours and premium pay for regularly missed or otherwise, non-compliant, rest and meal breaks."  Cooney Decl., Ex. B, Compl. ¶ 130.  Plaintiffs' wage statement claim is therefore derivative of their other claims for unpaid wages, including overtime wages. Based on those allegations, it is reasonable to assume for the purposes of this jurisdictional analysis only, that all class members received inaccurate wage statements each pay period. *See Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) (concluding it is appropriate to use 100% violation rate for wage statement claim where the claim is derivative); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *7 (C.D. Cal. Dec. 3, 2019) (same).[3]

---

[3] Peloton does not concede that penalties under section 226 are recoverable for a derivative theory like the one Plaintiffs advance here. *See Mays v. Wal-Mart Stores, Inc.*, 804 F. App'x 641, 644 (9th Cir. 2020).

*(Cont'd on next page)*

Gibson, Dunn & Crutcher LLP

36.    Peloton's practice during the one-year period prior to the filing of the action[4] has been to issue paychecks to non-exempt employees on a bi-weekly basis (every second week). As such, a pay period includes two weeks. Pinkston Decl. ¶ 6(h).

37.    During the one-year period prior to the filing of the action, Peloton employed approximately 605 non-exempt employees in California holding the job titles Treadmill Specialist, Assembler, Warehouse Associate, Tread Operations, Master Technician, Field Operations Lead (all of which were identified in the complaint), and Field Specialist, Assembly Associate, Associate – Manufacturing (the positions one or more of the Plaintiffs held), and Assembly Technician, Field Specialist, Field Operations Coordinator (positions with titles similar to those listed in the complaint). *Id.* ¶ 6(f). These employees worked an aggregate total of 9,101 pay periods from April 15, 2021 and April 15, 2022. *Id.* ¶ 6(g). Based on Plaintiffs' allegations, the amount in controversy with respect to Plaintiffs' Sixth Cause of Action is approximately **$879,850**, calculated as follows:

| | |
|---|---|
| Penalty for initial pay period for each employee (605 initial pay periods x $50): | $30,250 |
| Penalty for each subsequent pay period for each employee (8,496 subsequent pay periods (9,101-605) x $100): | $849,600 |
| Amount in controversy for section 226 claim, based on Plaintiffs' allegations: | **$879,850** |

### 3.    Plaintiffs' Allegations Regarding Meal and Rest Periods Places Another $2.6 Million in Controversy

38.    Plaintiffs allege that Peloton "discouraged, impeded and through threats and intimidation prevented and dissuaded Plaintiffs and members of the Class from taking compliant 30-minute meal periods, nor did [Peloton] pay Plaintiffs or Members of the Class with an additional hour of pay for these meal period violations, nor did [Peloton] pay Plaintiffs and Class Members a premium pay penalty for missed, short, late or interrupted meal breaks." Cooney Decl., Ex. B, Compl. ¶ 88. In addition,

---

[4] The statute of limitations for this claim is one year. Cal. Civ. Proc. Code § 340(a).

Gibson, Dunn & Crutcher LLP

Plaintiffs allege that "[t]hroughout the Class Period, [Peloton] fails/failed to provide rest periods to Plaintiffs and certain of the Class Members," that "Plaintiffs and Class Members are/were frequently prevented from timely taking rest breaks," and that "Plaintiffs and Class Members were not paid premium pay penalties . . . for any of the workdays that [Peloton] failed to provide them timely, uninterrupted rest breaks." *Id.*, Compl. ¶¶ 95–97. Accordingly, Plaintiffs seek "premium pay" and "premium pay penalties" for allegedly missed meal and rest periods. *Id.*, Compl. ¶¶ 89, 98.

39. Under Labor Code section 226.7, "if an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c); *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 864–65 (2021).

40. During the three-year period prior to the filing of the action,[5] Peloton employed approximately 857 full-time, non-exempt employees in California holding the job titles Treadmill Specialist, Assembler, Warehouse Associate, Tread Operations, Master Technician, Field Operations Lead (all of which were identified in the complaint), and Field Specialist, Assembly Associate, Associate – Manufacturing (the positions one or more of the Plaintiffs held), and Assembly Technician, Field Specialist, Field Operations Coordinator (positions with titles similar to those listed in the complaint). Pinkston Decl. ¶ 6(c). Peloton's records show that approximately 75% of its non-exempt employees in California are employed on a full-time basis. *Id.* ¶ 6(b); *see Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *7 (N.D. Cal. Dec. 30, 2019) ("Plaintiff's argument is undercut by the nature of averages: even if a handful of class members may have experienced fewer violations than Defendant assumes, it is equally probable that other class members experienced more violations than Defendant

---

[5] The statute of limitations for an action under Labor Code section 226.7 is three years. Cal. Civ. Proc. Code § 338(a); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007).

Gibson, Dunn & Crutcher LLP

assumed.  Defendant need not prove the exact violation rate for each member of the class for its amount in controversy estimate to be based on reasonable assumptions.").  These employees worked an aggregate total of 42,425 workweeks from April 15, 2019 to April 15, 2022, and were paid at an average hourly rate of $21.00.  Pinkston Decl. ¶ 6(d).

41.  Plaintiffs failed to specify in their Class Action Complaint how many meal periods or rest breaks they claim they and other putative class members actually missed and for which they claim they were not properly compensated.  However, Plaintiffs allege the existence of a systemic failure on the part of Peloton to schedule employees in a way that would permit them and others to take their meal periods and rest breaks uninterrupted.  Specifically, Plaintiffs allege that Peloton "*frequently*" failed to provide them with compliant meal periods and rest breaks.  Compl. ¶¶ 85 ("Throughout the Class Period, Plaintiffs and certain members of the Class are/were required to . . . work during their lunch breaks"), 88 ("[Peloton] discouraged, impeded and through threats and intimidation prevented and dissuaded Plaintiffs and members of the Class from taking compliant 30-minute meal periods"), 95 ("Plaintiffs and Class Members are/were frequently prevented from timely taking rest breaks due to constant work demands, competition and sensitive timelines.").  Based on these allegations alone, Peloton assumes a conservative violation rate of just one non-compliant meal period per week and just two non-compliant rest breaks per week—the equivalent of a 20% violation rate.  *See, e.g.*, *Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (noting that courts "routinely apply a 20% violation rate . . . for meal and rest period premiums"); *Tamimi v. SGS N. Am., Inc.*, 2019 WL 3408692, at *2 (C.D. Cal. July 29, 2019) (100% violation rate was reasonable where "meal and rest break claims contain[ed] blanket assertions about [d]efendant's conduct without any limiting language"); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (finding a once-per-week violation rate reasonable where the complaint alleged that the defendant "regularly and consistently" provided non-compliant meal periods); *Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099, at *5 (N.D.

Gibson, Dunn &
Crutcher LLP

16

Cal. Sept. 2, 2016) (noting that a one-day-per-week violation rate is reasonable where plaintiffs had alleged a policy or practice). The allegations of the complaint more than support Peloton's assumed violation rate of approximately 20% missed meal periods and rest breaks—a rate that "[c]ourts in this Circuit . . . have frequently upheld . . . for purposes of CAFA amount in controversy calculations." *Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019); *see also Danielsson*, 2019 WL 7290476, at *6 ("[A] 20% violation rate for meal and rest breaks during the putative class period—is reasonable given the allegations of a 'pattern and practice' of such violations.").

42.    Therefore, while denying liability altogether and for jurisdictional purposes only, Plaintiffs' meal and rest period claims place at least **$2,672,775** in controversy, calculated as follows:

| | |
|---|---|
| Conservative estimate of meal period penalties for each employee in each week (1 x $21 average hourly rate): | $21 |
| Aggregate number of weeks worked: | 42,425 |
| Amount in controversy for meal period claims ($21 x 42,425): | **$890,925** |
| Conservative estimate of rest break penalties for each employee in each week (2 x $21 average hourly rate): | $42 |
| Aggregate number of weeks worked: | 42,425 |
| Amount in controversy for rest break claims ($42 x 42,425): | **$1,781,850** |

43.    Again, this assumption is conservative and in line with case law from this Circuit that allows a defendant to assume that each member of the putative class suffered a meal period violation once per week (out of a possible five meal periods owed) and a rest break violation twice per week (out of a possible ten rest breaks owed) where the plaintiff alleges "regular" or "frequent" violations occurred. *Avila v. Kiewit Corp.*, 789 F. App'x 32, 33–34 (9th Cir. 2019) (reversing remand order after finding that allegations of "frequent" and "regular" missed meal periods and rest breaks allowed the defendant to "reasonably . . . assume[] that each of the class members suffered the violations alleged"); *see also Branch v. PM Realty Grp., L.P.*, 647 F. App'x 743, 745–46 (9th Cir.

2016) (holding "extrapolated violation rate" of two meal period violations per week was reasonable where plaintiff claimed he and the putative class "frequently" had breaks interrupted).

44.    Accordingly, Plaintiffs' claims for alleged meal and rest period violations place at least an additional $2,672,775 in controversy.

### 4.    Plaintiffs' Request for Attorneys' Fees Places an Additional $1.3 Million in Controversy

45.    Plaintiffs also explicitly seeks attorneys' fees should they recover for any of the claims in this action. *See* Cooney Decl., Ex. B, Compl., Prayer for Relief ¶ 16. "[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees *must* be included in the assessment of the amount in controversy" for CAFA purposes. *Arias*, 936 F.3d at 922. While Peloton reserves its right to contest any award of attorneys' fees at the appropriate time, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees in the Ninth Circuit. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'"). Plaintiffs' counsel has previously settled similar class actions in California in which he received in *excess* of 25% in attorneys' fees as a part of a settlement. *See Dada v. CyberCoders, Inc.*, Case No. 8:18-cv-01023-JVS-JDE (C.D. Cal. Mar. 6, 2020) (order approving wage and hour settlement that included attorneys' fees of approximately 30% of the total settlement account). Peloton denies that any such attorneys' fees are owed to Plaintiffs or putative class members. However, for purposes of this jurisdictional analysis *only*, Peloton relies on Plaintiffs' allegations that the attorneys' fees are owed.

46.    Here, Peloton has established that the amount in controversy is *at least* **$5,370,805** for Plaintiffs' waiting time penalties, wage statement, and meal and rest period claims alone, and Plaintiffs have not indicated that they will seek less than 25%

of a common fund in attorneys' fees.  *See* Cooney Decl., Ex. B, Compl. ¶¶ 2, 62, 111, 124, 131, 142, 148, 155, 171 & Prayer for Relief ¶ 16 (seeking attorneys' fees).

47.     Using a 25% benchmark figure for potential attorneys' fees for Plaintiffs' allegations regarding waiting time penalties, wage statements, and meal and rest periods results in estimated attorneys' fees of approximately **$1,342,701.25**, calculated as follows:

| | |
|---|---|
| Conservative estimate of amount in controversy from waiting time penalties claim: | $1,818,180.00 |
| Conservative estimate of amount in controversy from wage statement claim: | $879,850.00 |
| Conservative estimate of amount in controversy from denied meal and rest break claims: | $2,672,775.00 |
| Attorneys' fees benchmark: | 25% |
| Attorneys' fees: | **$1,342,701.25** |

## 5.     Just Four of Plaintiffs' Ten Causes of Action, Including Attorneys' Fees, Place More than $6.7 Million in Controversy

48.     In summary, Plaintiffs' allegations regarding a purported failure to pay timely wages upon separation of employment, failure to provide accurate wage statements, and denial of meal and rest breaks place more than $6.7 million in controversy, inclusive of attorneys' fees.   This amount-in-controversy calculation underestimates the total amount placed in controversy by Plaintiffs' Class Action Complaint because it is based on conservative assumptions about Plaintiffs' putative class allegations and does not account for, among other things, any recovery for Plaintiffs' other claims, including failure to pay overtime (Third Cause of Action), failure to maintain accurate records (Fourth Case of Action), failure to pay all wages when due (Fifth Cause of Action), failure to reimburse business expenses (Seventh Cause of Action), violation of the California WARN Act (Ninth Cause of Action), or violation of the Unfair Competition Law (Tenth Cause of Action).

Gibson, Dunn &
Crutcher LLP

49.    Plaintiffs' allegations therefore place more than the requisite $5 million in controversy.  The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

### III.    THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

50.    Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

a)    This is a civil action which is a class action within the meaning of § 1332(d)(1)(B);

b)    The action involves a putative class of at least 100 persons as required by § 1332(d)(5)(B);

c)    The amount in controversy exceeds $5 million, exclusive of interest and costs, as required by § 1332(d)(2); and

d)    At least one member of the putative class is a citizen of a state different from that of any defendant as required by § 1332(d)(2)(A).

Accordingly, this action is properly removable under 28 U.S.C. §§ 1441, 1446, and 1453.

51.    The United States District Court for the Central District of California is the federal judicial district in which the Los Angeles County Superior Court sits.  This action was originally filed in the Los Angeles County Superior Court, rendering venue in this federal judicial district proper.  28 U.S.C. § 84(c); *see also id.* § 1441(a).

52.    True and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Civil Case Cover Sheet Addendum, (e) Notice of Case Assignment – Unlimited Civil Case, (f) First Amended General Order (Mandatory Electronic Filing for Civil), (g) Alternative Dispute Resolution (ADR) Information Package, (h) Voluntary Efficient Litigation Stipulations Packet, (i) Notice of Service of Process Transmittal, and (j) Proof of Service of Summons are attached as Exhibits A–J to the Declaration of Megan Cooney ("Cooney Decl.") filed concurrently herewith.

Gibson, Dunn &
Crutcher LLP

1    These filings constitute the complete record of all records and proceedings in the state

2    court.

3        53.    Upon filing the Notice of Removal, Peloton will furnish written notice to

4    Plaintiffs' counsel, and will file and serve a copy of this Notice with the Clerk of the Los

5    Angeles County Superior Court, pursuant to 28 U.S.C. § 1446(d).

6

7

8    Dated: May 18, 2022

9                                    MEGAN COONEY
                                     LAUREN M. FISCHER
10                                   GIBSON, DUNN & CRUTCHER LLP

11

12                                   By:   /s/ Megan Cooney
                                                Megan Cooney
13

14                                   Attorneys for Defendant
                                     PELOTON INTERACTIVE, INC.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

21